COUNTY COUNCIL FOR MONTGOMERY COUNTY *v.*
SUPERVISOR OF ASSESSMENTS OF
MONTGOMERY COUNTY ET AL.

[No. 222 (on motion to dismiss), September Term, 1974.]

*Decided March 4, 1975.*

*Motion for rehearing filed April 3, 1975; denied April 14, 1975.*

The cause was argued on the motion to dismiss before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*James L. Thompson* for James R. Miller and Francis L. Carter, Ex'rs of the Estate of Laura P. Miller, part of appellees.

*H. Christopher Malone, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney,* and *Robert G. Tobin, Deputy County Attorney,* on the answer to the motion, for appellant.

SMITH, J., delivered the opinion of the Court.

We shall here hold that the County Council of Montgomery County is not synonymous with the term "county commissioners" as used in Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 256 (a).

This case began its trip to this Court when the Appeal Tax Court for Montgomery County set assessments on properties of various appellees here (the Taxpayers) which were not to the liking of the Montgomery County Council (the County Council), appellant here. The County Council filed appeals with the Maryland Tax Court claiming that "[t]he reduction granted by the Appeal Tax Court [was] illegal and erroneous, and contrary to fact and law." The Taxpayers moved there to dismiss the appeals on the ground that the content of the petition failed to comply with the requirements of Code (1957) Art. 81, §§ 229 (a) and 256 (b) and the rules of procedure of the Maryland Tax Court. They also moved to dismiss on the further ground that although "Article 81, Section 256 (a) permits a County claiming to be aggrieved because of an assessment reduction to appeal to the Maryland Tax Court," that "Montgomery County operates

under the charter form of government, which creates in Article 1 a legislative branch and in Article 2 an Executive branch," which "two branches comprise the government of Montgomery County," and "[t]he County Council has legislative powers only [which] powers do not extend to initiating appellate procedures . . . ." On August 21, 1974, the Tax Court passed an order reciting the fact that the cases "c[a]me on for hearing on Motions to Dismiss only, and no written Memoranda ha[d] been filed in response to the Court's request . . . ." It ordered that the motions to dismiss be granted. Its memorandum of grounds for decision said:

"These cases were heard before the Maryland Tax Court on April 3rd, 1974, solely on the Motions to Dismiss filed therein. At the conclusion of the oral argument, leave was granted to file written Memoranda within thirty days and if additional time was requested to so notify the Court. The thirty days having long since elapsed, no written memoranda having been filed with the Court, and no request having been received by the Court for an extension of time, the Court must rule on the record. The Court is of the opinion that, based upon the record before it, the Motions to Dismiss shall be granted."

Feeling itself aggrieved, the County Council appealed to us under the authority of Code (1957, 1974 Cum. Supp.) Art. 81, § 229 (1). The Taxpayers have moved in this Court to dismiss the appeal of the County Council under Maryland "Rule 835 b (1) which permits the appellee to seek dismissal of an appeal where the appeal is not allowed by law," contending that "[w]hen Article 81, Sections 256 and 229 are read in conjunction with Article XI-A, Section 3 of the Maryland Constitution and Articles 1 and 2 of the Charter for Montgomery County" we "should . . . conclude that the Appellant does not have standing or a sufficient legal interest in the subject matter of the appeal to pursue the appeal before this Court."

We conclude that the motion to dismiss must be denied

since Art. 81, § 229 (1) provides for an appeal to this Court from a final order of the Tax Court. The order in this instance was indeed a final order and a dismissal of an appeal from an inferior tribunal on the basis of lack of jurisdiction is reviewable.

The basis for the dismissal of the case by the Tax Court does not clearly appear, but a question of the jurisdiction of that administrative agency even though not tried and decided below and neither briefed nor argued, may be raised by this Court, *sua sponte*, as an exception to the general rule established by Maryland Rule 885. *State v. McCray*, 267 Md. 111, 126, 297 A. 2d 265 (1972), and cases there cited. Because the question of the County Council's right of appeal to the Tax Court was presented to us in the briefing and argument on the motion to dismiss, we proceed to a consideration of that matter rather than requiring further briefing and argument.

The right of appeal to the Maryland Tax Court granted by Code (1957, 1969 Repl. Vol.) Art. 81, § 256 (a) is to "[a]ny taxpayer, any city, or the Attorney General or Department on behalf of the State, or a supervisor of assessments as provided in § 234 of [that] article, or the county commissioners of any county where an appeal tax court has been created . . . ." Thus, a resolution of this controversy depends upon the interpretation of that section when read with that portion of the home rule provisions of the Maryland Constitution embodied in Art. XI-A, § 3 which states in pertinent part:

> "Every charter so formed shall provide for an elective legislative body in which shall be vested the law-making power of said City or County. Such legislative body in the City of Baltimore shall be known as the City Council of the City of Baltimore, and in any county shall be known as the County Council of the County. The chief executive officer, if any such charter shall provide for the election of such executive officer, or the presiding officer of said legislative body, if such charter shall not

120

provide for the election of a chief executive officer, shall be known in the City of Baltimore as Mayor of Baltimore, and in any County as the President *or Chairman* of the County Council of the County, and all references in the Constitution and laws of this State to the Mayor of Baltimore and City Council of the City of Baltimore or to the County Commissioners of the Counties, shall be construed to refer to the Mayor of Baltimore and City Council of the City of Baltimore and to the President *or Chairman* and County Council herein provided for whenever such construction would be reasonable." (Emphasis added and explained later in this opinion.)

The same general rules are applicable to the interpretation of the Constitution as are applicable to the interpretation of statutes. *Kadan v. Board of Supervisors of Elections of Baltimore County,* 273 Md. 406, 329 A. 2d 702 (1974). All parts of a statute are to be read together to find the intention of the Legislature as to any one part and all parts are to be reconciled and harmonized if possible. *Kadan, supra,* and *Thomas v. Police Commissioner,* 211 Md. 357, 361, 127 A. 2d 625 (1956). Statutes are construed according to their plain meaning and words used in legislation are to be considered in their plain and ordinary meaning when those words are not ambiguous. *Patapsco Trailer Service v. Eastern Freightways,* 271 Md. 558, 564, 318 A. 2d 817 (1974), and *City of Annapolis v. Anne Arundel Co.,* 271 Md. 265, 292, 316 A. 2d 807 (1974).

County Commissioners in non-chartered counties "are declared to be a corporation" by Code (1957, 1973 Repl. Vol.) Art. 25, § 1. They have been such at least since the passage of Chapter 411 of the Acts of 1874. "Historically, County Commissioners are outgrowths of the old levy courts (originally established by Ch. 53 of the Laws of 1794), which were composed of the justices of the peace of the several counties" and "[t]heir duties were to meet and determine the necessary expenses of their counties

and to impose an assessment or rate on property to defray county expenses." "The name 'County Commissioners' was first constitutionally recognized in the Constitution of 1851," *City of Bowie v. County Comm'rs*, 258 Md. 454, 461, 267 A. 2d 172 (1970), and *Cox v. Anne Arundel County*, 181 Md. 428, 433-34, 31 A. 2d 179 (1943). Moreover, "[u]nder our law County Commissioners are corporations, they act not as individuals but in their corporate entity. *Clark v. Harford Agricultural & Breeders' Asso.*, 118 Md. 608 [, 617, 85 A. 503 (1912)]." *Jay v. Co. Comm'rs. Harford*, 120 Md. 49, 52, 87 A. 521 (1913). In *Clark* the observation was made relative to the commission there under consideration that it "must act by a majority vote, and like other boards, or corporations, the individual members thereof exercise no powers except by and through a majority of the body itself."

The provisions of Constitution Art. XI-A, § 3 can be more easily understood and analyzed if written as follows:

The chief executive officer

   (if any such charter shall provide for the election of such executive officer), or

the presiding officer of said legislative body

   (if such charter shall not provide for the election of a chief executive officer)

shall be known:

   a. in the City of Baltimore as Mayor of Baltimore, and

   b. in any County as the President or Chairman of the County Council of the County.

All references in the Constitution and laws of this State to the Mayor of Baltimore and City Council of Baltimore shall be construed to refer to the Mayor of Baltimore and City Council of the City of Baltimore, and

all references in the Constitution and laws of this

State to the County Commissioners of the Counties
shall be construed to refer to the President and
County Council or Chairman and County Council,
whenever such construction would be reasonable.

The above referred to language of Art. XI-A, § 3 has
undergone but one change since it came into the Maryland
Constitution upon ratification by the people in 1915 of the
amendment proposed by Chapter 416 of the Acts of 1914.
That change was the addition of the words "or Chairman" in
the two places in which we have placed italics in our
quotation of § 3. In other words, from 1915 until the
ratification by the people in 1972 of the amendment
proposed by Chapter 371 of the acts of that year, the
pertinent section read as though the italicized language did
not appear in it. In 1915, the corporate name of the City of
Baltimore was "Mayor and City Council of Baltimore," as it
is today. *See* Const. Art. XI, § 7, and Charter of Baltimore
City (1964) Art. 1, § 1. Prior to the amendment of the
Constitution in 1915 adding Art. XI-A, no provision existed
for home rule. Judge W. Mitchell Digges explained for the
Court the reason for this amendment in *State v. Stewart,*
152 Md. 419, 137 A. 39 (1927):

"The wisdom of incorporating in the organic law of
the state such provisions as are contained in this
article had been urged for a number of years prior
to its adoption, the reasons assigned by its
proponents being that a larger measure of home
rule be secured to the people of the respective
political subdivisions of the state in matters of
purely local concern, in order that there should be
the fullest measure of local self-government, and
that these local questions should thus be
withdrawn from consideration by the General
Assembly, leaving that body more time to consider
and pass upon general legislation, and to prevent
the passage of such legislation from being
influenced by what is popularly known as
'log-rolling'; that is, by influencing the attitude and

vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested." *Id.* at 422.

When one considers the fact that at the time of the adoption of Art. XI-A the corporate name of the City of Baltimore was "Mayor and City Council of Baltimore," that by the provisions of Art. 25, § 1 county commissioners of each county are "declared to be a corporation," that one would hardly expect to call the chief executive officer of a county "mayor," and the words "President and County Council" are an approximation of "Mayor of Baltimore and City Council of the City of Baltimore," it becomes obvious to us that the intent of the framers of the amendment was to refer to the county in its corporate capacity, by whatever name it might ultimately be known upon the adoption of a charter. Accordingly, we conclude that it is the corporate entity of Montgomery County, Maryland, so known in its charter, which is vested with the right of appeal under Art. 81, § 256 (a) in lieu of the prior corporate entity, the County Commissioners of Montgomery County. *Cf. Barranca v. Prince George's County,* 264 Md. 562, 287 A. 2d 286 (1972). For purposes of this opinion we need go no further than to say that it is necessary that the appeal be maintained in the name of the corporate entity. Since the County Council is not the corporate entity, an appeal may not be maintained in its name. *County Council for Montgomery County, Maryland v. Montgomery Association, Inc.,* 274 Md. 52, 333 A. 2d 506 (1975), has no bearing on this case since there the County Council was sued as a party defendant and no issue was raised as to whether it was a "proper defendant in an action against Montgomery County," as we pointed out in a footnote in that opinion.

The County Council suggests that there is yet another reason why it should be able to maintain the appeal and that is that its individual members are taxpayers. The short answer to that contention is that the appeal was not

124

docketed in the name of the individual members of the County Council nor did they in any way associate their individual names with the appeal at any time, a different situation from that prevailing in *County Commrs. of A. A. County v. Buch,* 190 Md. 394, 58 A. 2d 672 (1948), where an individual taxpayer complained. Accordingly, this contention is without merit.

> *Motion to dismiss denied; order affirmed; appellant to pay the costs.*